UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA   )  | Criminal No. 1:05-cr-10226 RWZ |
| )  | |
| )  | |
| V.                        )  | |
| )  | |
| )  | |
| SAMNANG AM                )  | |

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE AND STATEMENTS

INTRODUCTION

  The defendant having filed a motion to suppress evidence and any statements allegedly made by the defendant hereby submits the defendant's Affidavit and further Memorandum. Immediately apparent from reading the defendant's affidavit and memorandum is the factual disagreement of how the stop and search of the defendant occurred. This memorandum presupposes the acceptance of much of  the defendant's version of the events and thus may be premature in its application prior to an evidentiary hearing on this matter. As such, the defendant respectfully requests that the defendant be allowed to supplement this memorandum subsequent to any hearing granted by the Court on the defendant's motion.

The defendant submits the following exhibits in support of his motion to suppress:

EXHIBIT #1 Lynn Police Incident Report

EXHIBIT #2 ATF Report of Investigation

EXHIBIT #3 Affidavit of Sammang Am

FACTS

The defendant was arrested on May 26, 2006 at approximately 7:00PM while walking down Essex Street in Lynn, Massachusetts.

The facts of and the Court's analysis in United States v. Richard Weaks, 1995 U.S. Dist. LEXIS 20015 are similar and relevant to the facts of this case. In Weaks, Judge Keeton synopsized and crystallized the facts and contentions upon which the Government relied in opposition to the defendant's motion to suppress. He did so as follows:

>   (1) one or more of a group of police officers who observed the defendant Richard Weaks in the back seat of a moving taxicab on a public thoroughfare at approximately 11:00 a.m. on a Tuesday morning, June 20, 1995, observed facts about his conduct,
>
>   (2) which facts they could articulate (namely, that defendant, upon seeing them, covered his face, looked back at them as they followed the taxi, tapped on the glass separating the passenger compartment and the taxidriver and pointed to the left, and disappeared once from their view as the taxicab then turned left, all in the space of about thirty seconds), and
>
>   (3) which articulated facts, taken together with reasonably reliable information reported to them from other law enforcement sources (namely, that defendant was known to be a member of the Intervale gang, and that the Intervale gang and a rival gang had been engaged in a feud, punctuated by violence from time to time and with two incidents at nighttime, several days before, at a location several blocks away in the general direction of where the taxicab was heading), and
>
>   (4) taken together with rational inferences that could be drawn from all these facts and circumstances,
>
>   (5) by a reasonably competent police officer in light of the experience of such an officer,
>
>   (6) were enough to make it reasonable for the reasonably competent police officer,

(7) to form a "reasonable suspicion," as that phrase is used in Terry v. Ohio, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968),

(8) that the defendant Weaks was then engaged in the specific criminal activity of traveling toward a nearby site of an ongoing feud between two gangs with intent to participate in that gang activity,

(9) or was about to do so and was likely to have with him in the taxicab weapons that were a threat to the safety of the taxicab driver and members of the public in the vicinity. United States v. Weaks, 1995 U.S. Dist. LEXIS 20015 , 3 -5

In this case the government relies upon similar facts up to the initial contact with the defendant Am. The Lynn Police Report and the ATF Report of Investigation ( Exhibits #1 and #2 respectively) According to these reports the arresting officers on May 26, 2005, at approximately 7:00 PM, Lynn Police Officers Kimec and Vail, were patrolling in a marked police cruiser in the area of Essex Street In Lynn Massachusetts. According the facts stated in both reports the officers claimed the following information:

1. They knew the defendant Samnang AM.

2. Sergeant Vail had been assigned to the Lynn Police Derpartmnt's Gang Unit for several years and was aware that AM was a member of a Lynn Street Gang, the Oriental Street Boys (OSB).

3. They claim that he was a "possible" suspect in a shooting that occurred on Howard Street in Lynn on May 20, 2006. (Exhibit #2 page 2)

4. Sergeant Vail was aware of that AM had been arrested on firearms charges in the past, and did not have a license to carry a firearm in the Commonwealth of Massachusetts.

5. "With this information in hand Officer Kmiec pulled the marked unit over to the side of Essex Street and attempted to speak with Am". (Exhibit #2 pages 2)

6. According to the Officers, upon the stopping of their cruiser, Am turned around and walked towards them, affirmatively answered their question whether he had a gun, they pat frisked him, found the weapon and arrested him.

7.  The defendant disputes this version of the events as stated in his affidavit. ( Exhibit #3 –Affidavit of Samnang Am).

## VALIDITY OF THE STOP

Although there is a disagreement of how the arrest in this case occurred, a close analysis of the government's factual assertions demonstrate that the police did not have the requisite "reasonable suspicion" to form the basis of an investigatory stop.

An investigatory stop must be justified by some objective manifestation that the person stopped was, is, or is about to be, engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981). "An assessment of the whole picture must yield a particularized suspicion ... that the particular individual being stopped is engaged in wrongdoing." Id. at 418 (emphasis added). United States v. Weaks, 1995 U.S. Dist. LEXIS 20015 , 8.

In this case, the defendant's actions at the time the police first called out to Am do not support an inference of criminal activity. The facts do not even support an inference of an effort by the defendant to avoid contact with the police officers. Even where such conduct occurs there must be some additional factor that would suggest that the reason for such a desire to avoid contact with the police was from an ongoing or recently completed criminal activity, otherwise this behavior could not justify a stop. See e.g. United States v. Peters, 10 F.3d 1517, 1522 (10th Cir. 1993) (passenger's "sideways glances" at a passing police officer are "insufficient to support a reasonable suspicion"); United States v. Pavelski, 789 F.2d 485, 489 (7th Cir. 1986) (causing a car to make a

4

sharp turn while passengers avoid making eye contact with police is insufficient to generate reasonable suspicion), cert. denied, 479 U.S. 917, 93 L. Ed. 2d 295, 107 S. Ct. 322; Commonwealth v. Wren, 391 Mass. 705, 708 n.2, 463 N.E.2d 344, 346 n.2 (1984) (an attempt to avoid contact with or observation by the police is not enough to justify a suspicion of criminality to stop a vehicle); Commonwealth v. Thibeau, 384 Mass. 762, 764, 429 N.E. 2d 1009, 1010 (1981) (defendant's riding bicycle, officer's recognition of increasing use of bicycles to transport illegal drugs, defendant's making sudden left turn down side street when confronted by police officer, and defendant's flight when pursued, were insufficient to stop defendant); State v. Kupihea, 59 Haw. 386, 581 P.2d 765, 766 (Hawaii 1978) (passengers' crouching down so their heads disappeared from police view, without more, was insufficient basis for stop.) United States v. Weaks, 1995 U.S. Dist. LEXIS 20015 ,9

A comparison of the facts and circumstances of Weaks case and the instant case demonstrate that the facts in Weaks are arguably stronger or at least as strong as the facts of this case prior to the initiation of the stop, yet the court suppressed the evidence on the grounds of an illegal stop. According to the police in Weaks they identified Weaks as the person in the taxicab, that he was a member of a gang that was in a feud with an other rival gang and routinely engaged in violent confrontations with that rival gang including two incidents at nighttime several days before, at a location several blocks away in the general direction of where the taxicab was heading that evening. Additionally, the defendant in Weaks did take steps to avoid contact with the police.

5

In this case, the Lynn Police claim that prior to the initiation of the stop, (stopping the vehicle and calling out to the defendant), they knew the defendant, that he was a member of a street gang, that he had a criminal record and that he did not possess a valid license to carry a firearm. Supposedly one of the officers had information from another member of the Lynn Police Department that AM was a suspect or " possible " suspect in a recent shooting that had occurred several days earlier. Regardless of whose version of the facts is deemed true, unlike in Weaks, the defendant made no attempt to avoid contact with the police.

The factual contentions about the defendant in this case are general in nature. Even the statement that Sergeant Vail learned through another Lynn Police Officer that the defendant was a suspect in a shooting that occurred six days earlier, May 20, 2006. The extent and nature of Sergeant Vail's knowledge about this incident is unknown as is whether the defendant was the only suspect or one of many or a "possible" suspect as is stated in Exhibit #2. Such generalized suspicion was specifically rejected by the Court in United States v. Weaks, 1995 U.S. Dist. LEXIS 20015 ,9 – 12. there the Court rejected generalized suspicion of criminal activity and that each individual must be judged individually. Terry, 392 U.S. at 21, n.18 As in Weaks, the Government here is unable "to point to any specific act of the defendant that would provide a basis for reasonably suspecting him to be a participant in an immediate crime and not just a person who might, either immediately or later, be either a victim of crime, or an interested bystander whose friends and associates might be either participants or victims." United States v.

6

Weaks, 1995 U.S. Dist. LEXIS 20015 ,11 – 12.

In the case of United States v. Hart, 334 F. Supp. 2d 5 (2003) the Court found facts which individualized the suspicion that did not exits in Weaks or the present case. In Hart the police had an abundance of intelligence regarding Hart's gang involvement and reputation for carrying a gun. It is the additional facts, however, which distinguish the Hart case from the instant case. In that case on July 3 2002 the police were investigating a drive by shooting at the residence of Hart. On July 4, 2002 there was a second drive by shooting on Blue Hill Avenue which the police learned from an informer, whose reliability had not been established, that Hart was the target of the shooting. Also, one of the arresting officers received information that Hart was "packing heat". On July 5, 2002 there was another shooting and arson at the Hart residence. An interview with his mother indicated that he was aware that he was being targeted and taking evasive maneuvers by driving his brother's car and sleeping at a friend's residence to avoid being discovered by those out to kill him. Based upon all the events that had transpired, the information that the police received, the previous generalized intelligence about Hart's gang activity and reputation for carrying a gun, they believed that Hart was committing the crime of possession of a handgun. United States v. Hart, 334 F. Supp. 2d 5, 6 – 9, (2003).  The facts in Hart are highly distinguishable from the facts in the present case. Also, it was the basis of the Hart Court's decision distinguishing its facts from those in Weaks because it "provided the individualized suspicion that was lacking in United States v. Weaks, 1995 U.S. Dist. Lexis 20015. . United States v. Hart, 334 F. Supp. 2d 5, 11 (2003).

7

Based upon the police conduct in the stop and arrest of the defendant, the defendant respectfully requests this Honorable Court to suppress the evidence seized from the defendant on the date of his arrest.

The defendant,<br>
SAMNANG AM<br>
By his attorney,<br>
<br>
'/s/Walter H. Underhill, Esquire'<br>
Walter H. Underhill, Esq.<br>
66 Long Wharf<br>
Boston, MA<br>
02110<br>
4th. Floor<br>
Tel. # 617-523-5858<br>
B.B.O. # 506300

### *SPEEDY TRIAL WAIVER*

The defendant agrees that the time from July 13, 2006 until the disposition of his pre-trial motions is excludable time under the Speedy Trial Act and hereby waives said time.

SIGNED:    '/s/Walter H. Underhill, Esquire'
           WALTER H. UNDERHILL, ESQ.

DATE:              August 17, 2006

## RULE 7.1 CERTIFICATION

The parties have had an opportunity to confer on this motion and the motion is assented to by the attorney for the Government, Lisa Asiaf.

SIGNED:   '/s/Walter H. Underhill, Esquire'

DATE:     August 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

SIGNED:   '/s/Walter H. Underhill, Esquire'
          WALTER H. UNDERHILL, ESQ.

DATE:     July 10, 2006

# LYNN POLICE INCIDENT REPORT

PAGE: 1 OF: 2

REPORT# 05/33239

LOCATION OF INCIDENT: Essex St and Joyce St

TYPE OF INCIDENT OR OFFENSE: Carrying Firearm w/out a license

DID THE INCIDENT INVOLVE DOMESTIC ABUSE AS DEFINED BY c209, s1A? ........ YES [ ] NO [✓]
DID THE INCIDENT INVOLVE ANY CIVIL RIGHTS ISSUES AS DEFINED BY c265, s 37? ........ YES [ ] NO [✓]

DATE REPORTED: 5-26-05  TIME REPORTED: 1903  DATE OF INCIDENT: 5-26-05  FROM: 19-5 TO: 2015 TIME OF INCIDENT

NAME OF BUSINESS: _____  TELEPHONE: _____

| PARTICIPANTS NAME | TYPE | D.O.B. | SEX | RACE | ADDRESS | TELEPHONE |
|---|---|---|---|---|---|---|
| 1. Sammang Am | D | 5-7-83 | M | A | 4 Houghton St #1, Lynn | 781-592-4412 |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |

RACE: W=WHITE  B=BLACK  O=ORIENTAL  H=HISPANIC  I=AMERICAN INDIAN
TYPE: O=OWNER(business)  PR=PERSON REPORTING  V=VICTIM  S=SUSPECT  D=DEFENDANT  W=WITNESS

REPORT: Car 18 (Sgt. Vail and Officer Kmiec): On 5-26-05 at approximately 1903 hrs. we were on proactive patrol on Essex St. when we observed Sammang Am walking south on Essex St. Sgt Vail through his extensive training and experience with gangs is familiar with Am. Am is a known member of the O.S.B. Gang (Oriental Street Boys). Sgt Vail is familiar with Am's history of carrying weapons including guns. Sgt Vail also had information from Det Hogan of the Lynn Police Gang Unit that Am is a suspect in a recent shooting that occurred on Howard St on 5-20-05 (Incident #05/31614).

We were in a marked cruiser and we pulled up behind Am as he walked on Essex St. Am turned around and saw us exiting the cruiser without being asked. Am turned around and walked back towards us and our cruiser. We did not block Am's path and he was free to continue walking. As Am turned and walked towards us he put his hand (right) into his front pants pocket. For our safety fearing that Am may have a weapon Sgt Vail ordered Am to take his hand out of his pocket. Am complied with Sgt. Vail's order.

We asked Am if he had anything on him and Am stated, "I'm strapped." Sgt Vail took control of Am's right arm and I took control of his left arm. Through our training and experience we immediately recognized the "I'm strapped" statement to mean that Am was carrying a

REPORTING OFFICER: Kmiec  PAYROLL: 6762
SECOND OFFICER: Sgt Vail  PAYROLL: 6588
DIVISION SERGEANT: Sgt Vail  PAYROLL: 6588

LYNN POLICE SUPPLEMENT REPORT

PAGE: 2 OF 2

REPORT: 05 33239

PARTICIPANTS NAME: SEE FRONT   ADDRESS

TYPE OF INCIDENT OR OFFENSE   DATE OF INCIDENT   TIME OF INCIDENT FROM: TO:

firearm and we took control of him for our safety. We asked Am where the gun was and he stated "Front left pocket." I pat-frisked Am's front left pants pocket area and felt a hard metal object. I then removed a small handgun from Am's front left pants pocket.

The handgun was a Titan .25 caliber (Serial # FD98520). There was a magazine containing 6 rounds of ammunition (PMC 25 Auto) in the handgun when it was taken from Am. The handgun was later cleared for safety purposes and there was not a round in the chamber.

Am was placed under arrest without further incident and transported to the station where he was booked for:
① Carrying a Firearm w/out being licensed
② Possessing Ammunition w/out firearm ID

The handgun was checked through NCIC and it was not reported stolen. The handgun and magazine with the 6 rounds of ammunition were seized and placed in the Lynn Evidence Control Room.

Am was held pending bail.

NOTE: Am was checked for a license to carry and he does not possess a license to carry a firearm.

REPORTING OFFICER: Kmiec    PAYROLL: 6762
SECOND OFFICER: Sgt. Vail    PAYROLL: 6588
DIVISION SERGEANT: [signature]   PAYROLL: 6588

DEPARTMENT OF JUSTICE
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
REPORT OF INVESTIGATION

Page 1 of 4

| ADDRESSED TO: | MONITORED INVESTIGATION INFORMATION: |
|---|---|
| Special Agent in Charge<br>Boston Field Division | Boston Field Division<br>FY-05<br>Report 001 |

TITLE OF INVESTIGATION:
AM, Samnang

| CASE NUMBER: | REPORT NUMBER: |
|---|---|
| 762025-05-0077 | 1 |

TYPE OF REPORT: (Check Applicable Boxes)

| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
|---|---|---|---|
| | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY (Name) | SUBMITTED BY (Title and Office) | SUBMITTED BY (Date) |
|---|---|---|
| John L. Kelter | Special Agent, Boston IV Field Office | 06/13/2005 |
| REVIEWED BY (Name) | REVIEWED BY (Title and Office) | REVIEWED BY (Date) |
| Kenneth J. Croke | Group Supervisor, Boston IV Field Office | 6/13/05 |
| APPROVED BY (Name) | APPROVED BY (Title and Office) | APPROVED BY (Date) |
| William J. Hoover | Special Agent in Charge, Boston Field Division | |

DESCRIPTION OF ACTIVITY:

Arrest of Samnang Am by Lynn PD on State firearms charges

SYNOPSIS:

On May 26, 2005, Samnang AM ("AM"), whose date of birth is March 7, 1983, and whose social security number is 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, was arrested by the Lynn police Department for carrying/possessing a firearm without being licensed to do so. AM is a convicted felon who qualifies for Federal Prosecution under the Armed Career Criminal statute.

NARRATIVE:

1. On May 26, 2005, Samnang AM ("AM"), whose date of birth is March 7, 1983, and whose social security number is 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, was arrested by the Lynn police Department for carrying/possessing a firearm without being

ATF EF 3120.2 (5-98)

|  | DEP. .MENT OF JUSTICE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES REPORT OF INVESTIGATION |  | Page 2 of 4 | 5 |

| DRESSED TO: ecial Agent in Charge ston Field Division | MONITORED INVESTIGATION INFORMATION: Boston Field Division FY-05 Report 001 |
|---|---|
| LE OF INVESTIGATION: 1, Samnang | |
| SE NUMBER: 2025-05-0077 | REPORT NUMBER: 1 |

.censed to do so. A check of AM's criminal history revealed that AM has two
.ult convictions for Assault & Battery. One is out of Lynn District Court,
cket # 0313CR5986A, and one is out of Salem District Court, Docket #
36CR2633A and 0336CR2633B. Both of these charges carry a sentence of up to
o and one half years in jail in the Commonwealth of Massachusetts. AM also
s a juvenile conviction out of Lynn juvenile court for Assault Dangerous
apon to wit a knife, Docket # 9713JV0013B. The detail of AM's arrest are as
llows.

2. On May 26, 2005, at approximately 7:00PM, Sgt. Mike Vail and
ficer Mike Kmiec of the Lynn Police Department were on patrol in a marked
iser in the area of Essex St. in Lynn, MA, when they observed an
idual known to them as Samnang AM walking on Essex St. in a Southerly
rection.

3. Sgt. Vail, having been assigned to the Lynn Police Department's
g Unit for several years, was aware that AM was a member of a Lynn Street
g called the Oriental Street Boyz (OSB), and was a possible suspect in a
oting that occurred on Howard St. in Lynn on 05/20/05. Sgt. Vail was also
re that AM had been arrested on firearms charges in the past, and did not
e a license of carry a firearm in the Commonwealth of Massachusetts.

4. With this information in mind, Sgt. Vail and Officer Kmiec pulled
marked unit over to the side of Essex Street and attempted to speak with

F 3120.2 (5-98)

| DEPARTMENT OF JUSTICE<br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES<br>REPORT OF INVESTIGATION | Page 3 of 4 | 6 |
|---|---|---|

| ADDRESSED TO:<br>Special Agent in Charge<br>Boston Field Division | MONITORED INVESTIGATION INFORMATION:<br>Boston Field Division<br>FY-05<br>Report 001 |
|---|---|
| TITLE OF INVESTIGATION:<br>M, Samnang | |
| CASE NUMBER:<br>2025-05-0077 | REPORT NUMBER:<br>1 |

4. When the officers did this, AM turned around and began to walk towards the marked unit. As AM did so, he put his right hand into his front pants pocket.

5. Out of concern for his safety as well as the safety of Officer Kmiec, Sgt. Vail told AM to remove his hands from his pocket. Sgt. Vail then asked AM if he had any weapons on his person. AM's reply to Sgt. Vail's question was, "I'm strapped." Both officers took this to mean that AM was in possession of a firearm, and took control of AM until they could determine if he did in fact have a firearm on his person.

6. As Sgt. Vail and Officer Kmiec began a pat frisk of AM for the weapon he indicated he was in possession of, they asked AM where the firearm was. AM replied to Sgt. Vail and Officer Kmiec that the firearm was in his "front left pocket." Officer Kmiec then pat frisked AM's front left pocket and felt a hard object he believed to be a firearm. At this point Officer Kmiec reached into AM's front left pocket and retrieved the object, which turned out to be a FIE Titan .25 caliber pistol, serial # ED95520. This firearm contained 6 rounds of PMC .25 Auto ammunition in the magazine. AM was taken into custody by Sgt. Vail and Officer Kmiec for possessing/carrying a firearm and ammunition with out being licensed to do so. The firearm was subsequently placed into the LPD evidence control room.

EF 3120.2 (5-98)

| | |
|---|---|
| DEPARTMENT OF JUSTICE<br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES<br>**REPORT OF INVESTIGATION** | Page 4 of 4     7 |
| ADDRESSED TO:<br>Special Agent in Charge<br>Boston Field Division | MONITORED INVESTIGATION INFORMATION:<br>Boston Field Division<br>FY-05<br>Report 001 |
| TITLE OF INVESTIGATION:<br>M, Samnang | |
| CASE NUMBER:<br>762025-05-0077 | REPORT NUMBER:<br>1 |

Upon the request of the Lynn Police department, S/A Kelter examined the firearm that had been located on the person of AM. S/A Kelter then described the make, model and caliber of the firearm to S/A Thurman, an ATF interstate nexus expert, who determined the firearm was not manufactured in the Commonwealth of Massachusetts, and had thus moved in interstate commerce.

**ATTACHMENTS:**

Copy of Lynn Police report # 05/33239 detailing arrest of AM

Computerized criminal history of AM

EF 3120.2 (5-98)